IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |          |                        |
|--------------------------|----------|------------------------|
|                          | *        |                        |
| FRANK TRIONFO, et al.,   | *        |                        |
|                          | *        |                        |
| v.                       | *        | Civil No. JFM-15-925   |
|                          | *        |                        |
| BANK OF AMERICA, N.A.    | *        |                        |
|                          | *        |                        |
|                          | ******   |                        |

## MEMORANDUM

Plaintiffs Frank and Suzanne Trionfo filed this action against Bank of America, the servicer of their mortgage loan, alleging violations of rules promulgated by the Consumer Financial Protection Bureau under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (2012), and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.* (West 2015).  The complaint is styled as a class action. Now pending is Bank of America's motion to dismiss.  (ECF No. 9).

No oral argument is necessary.  *See* Local Rule 105.6.  For the reasons set forth below, Bank of America's motion is granted.

## BACKGROUND

The plaintiffs own residential real property in Fallston, Maryland.  (Complaint, ECF No. 1 at ¶ 72).  In September 2015, the plaintiffs received a loan in the amount of $329,000 secured by a deed of trust on the property from Intervale Mortgage Corporation.  *Id.* at ¶ 73.  BAC Home Loans Servicing LP was the original servicer of the loan.  *Id.*  On July 1, 2011 Bank of America became the servicer of the loan.  *Id.* at ¶ 74.

Mr. Trionfo suffered a back injury and, as a result, was laid off from his landscaping job in 2010.  *Id.* at ¶ 76.  Mrs. Trionfo took a job in order to assist with the family finances, *id.* at ¶

76, but the plaintiffs fell behind on their mortgage payments and other debts from the time Mr.

Trionfo lost his job until June 2013 when he regained full-time employment.  *Id.* at ¶¶ 76–77.

This case involves a series of communications between Bank of America and the

plaintiffs.  The first communication identified by the plaintiffs was on March 15, 2014 when

Starla King, a member of Bank of America's "Home Loan Team" sent plaintiffs a letter

indicating that they were behind on their payments and "encouraging them to apply for loss

mitigation programs offered by BofA to prevent them from going into foreclosure."  *Id.* at ¶ 78.

The letter also contained a "brochure explaining the different loss mitigation options offered by

BofA" and a loss mitigation application.  *Id.*  The plaintiffs allege that on March 24, 2014 they

sent a completed loss mitigation application to BofA, *id.* at ¶ 79, explaining "how they had fallen

behind on their loan payments because Mr. Trionfo had lost his job" but stating that they could

now make payments because they were both employed.  *Id.* at ¶ 81.

The plaintiffs allege that Bank of America responded to their request with a letter dated

March 26, 2014.  *Id.* at ¶ 83.  The letter acknowledged receipt of their loss mitigation application.

*Id.* at ¶ 83.  The letter provided that Bank of America would send another letter "in the next few

days that either confirms we have all the documents we need from you, or identifies the

documents you still need to prove, along with the timeframe in which you should provide them."

*Id.* at ¶ 83.

On April 2, 2014, according to plaintiffs, Linda Clayton, a Bank of America customer

relationship manager ("CRM"), sent the plaintiffs a letter "stating she would work with the

plaintiffs to pursue every available option to assist the plaintiffs with their home loans."  *Id.* at ¶

86.  On April 4, 2014, however, the plaintiffs received a "notice of intent to foreclose" that again

encouraged them to apply for various loss mitigation options—the same programs identified in

the March 15, 2014 letter.  The plaintiffs allege that also on April 23, 2014 and April 25, 2014,

Bank of America sent them letters identical to the March 26, 2015 letter, indicating that the Bank

had received their loss mitigation application and would send them a letter within the next few

days indicating if their application was complete or incomplete.  *Id.* at ¶¶ 88, 89.

Again, according to plaintiffs, on September 22, 2014 they received a letter from Tracey

Newsome, identifying herself as their new CRM and indicating that she would be assisting them

with various loss mitigation options.  *Id.* at ¶ 91.  On November 13, 2014, Bank of America sent

the plaintiffs a letter in regards to their loss mitigation application.  *Id.* at ¶ 92.  The letter

acknowledged their pending loss mitigation application, but stated that it was incomplete, and as

a result, was no long under evaluation.  *Id.*  On November 25, 2014, the plaintiffs allege they

sent a letter to Bank of America, in which they "explain[][ed] that BofA had never requested

additional documentation from them or told them what documents it was purportedly missing"

and "asked BofA to continue evaluating their application."  *Id.* at ¶ 93.

On December 31, 2014, Bank of America sent the plaintiffs a letter indicating that their

loan had been referred to the Foreclosure Review Committee.  *Id.* at ¶ 94.  Plaintiffs allege that

the letter provided that Bank of America had "not received past due payments," despite the fact

that, according to plaintiffs, they were making payments.  *Id.*  On January 2, 2015, Bank of

America sent another letter warning the plaintiffs that "steps had been taken to begin the

foreclosure process."  *Id.* at ¶ 95.  The letter also stated that the plaintiffs "have not previously

shown interest in any of the alternatives," i.e. the loss mitigation programs, available to them.  *Id.*

Bank of America sent the plaintiffs another letter on January 5, 2015.  This letter

allegedly stated that Bank of America was "unable to provide them with a list of documents

required to be reviewed for a loan modification due to investor nonparticipation."  *Id.* at ¶ 96.

The letter allegedly stated that: "[t]he investor, or owner of your loan does not allow us to modify the terms of your loan documents." *Id.*

The plaintiffs allege that Bank of America's conduct throughout this period violated the RESPA regulations. First, the plaintiffs allege that Bank of America violated 12 C.F.R. § 1024.41(b), by not sending, within five days of receipt of the plaintiffs' loss mitigation application, a notification indicating whether or not the application was complete and if, incomplete, what was missing. *Id.* at ¶ 82. Second, the plaintiffs allege that Bank of America violated 12 C.F.R. § 1024.41(c) by also failing to, within 30 days of receiving a loss mitigation application, evaluating the plaintiffs for loss mitigation options or determining, which, if any, loss mitigation options were available to the plaintiffs. *Id.* at ¶ 84. Last, the plaintiffs argue that the Bank of America failed to "state the specific reasons why the plaintiffs were denied any trial or permanent loan modification" in violation of 12 C.F.R. 1024.41 (d). *Id.* at ¶ 85. The plaintiffs also argue that the conduct violated various provisions of the MCPA. *Id.* at ¶¶ 131–44.

On February 11, 2015, Bank of America instituted a foreclosure action against the plaintiffs. The plaintiffs allege that because Bank of America violated the notice requirements of RESPA, the foreclosure is invalid. *Id.* at ¶ 103. The plaintiffs also allege that Bank of America has since stopped accepting their monthly payments, *id.* at ¶ 104, has charged them $1,469.85 in late fees, $3,798.87 in foreclosure expenses and attorneys' fees, and has "ruined their credit score." *Id.* at ¶ 105. Additionally, the plaintiffs state in their complaint that Bank of America's conduct "substantially delayed the loss mitigation process," forced the plaintiffs to spend "considerable time and effort pursuing the loss mitigation process," and caused the plaintiffs to "incur administrative costs such as postage, travel expenses, photocopying, scanning, and facsimile expenses" that they otherwise would not have incurred. *Id.* at ¶¶106, 107, 108.

The plaintiffs bring this suit as a class action on behalf of similarly-situated individuals. They define a "nationwide class" as all persons in the country that submitted a loss mitigation application to Bank of America after January 10, 2014 and a "Maryland class" as all persons in Maryland that submitted a loss mitigation application to Bank of America after March 31, 2012. *Id.* at ¶ 110.

## STANDARD

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir.2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions."  *Id.* (internal quotation marks and alterations omitted).  It is not sufficient that the well-pled facts create "the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual

yeamatter, accepted as true, to state a claim to relief that is plausible on its face," meaning the

court could draw "the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* at 678.

## ANALYSIS

### I.    RESPA Violations

Bank of America's primary argument to dismiss hinges on the Consumer Financial

Protection Bureau's application of RESPA only to first-time loan modification applications.  The

pertinent regulation provides that "[a] servicer is only required to comply with the requirements

of this section for a single complete loss mitigation application for a borrower's mortgage loan

account."  12 C.F.R. § 1024.41(i).  Bank of America argues that this ban on "duplicative

requests" bars the plaintiffs' claims because the plaintiffs admit to submitting multiple loan

modification applications prior to the one at issue in this case.  The plaintiffs argue that because

their March 2014 application was their first *since the rules went into effect*, it is not a

"duplicative request."  (ECF No. 16 at p. 10) (emphasis added); *see also id.* ("Any efforts the

plaintiffs made to seek repayment options prior to the effective date of the regulations are not

only beyond the scope of the Complaint—and therefore may not be considered on a motion to

dismiss—they are not pertinent to plaintiffs' RESPA claim because they took place before the

law was operative.").

I agree with Bank of America and find that the regulations do not apply to the plaintiffs'

loan application.  In their complaint and motions, the plaintiffs state that they began to fall

behind on their mortgage payments in 2010 when Mr. Trionfo lost his job.  The first

communication that the plaintiffs allege violated RESPA, however, occurred four years later, in

March 2014.  The plaintiffs argue that what occurred between 2010 and this first communication is irrelevant, but state that during that time, "they implored BofA on numerous occasions to allow them to enter into a payment plan or other loss mitigation option that would enable them to pay the arrearages on their loan to get current."  *Id.* at p. 19.  According to plaintiffs, "[t]heir requests were either ignored or BofA falsely claimed it was missing the necessary documentation."  *Id.*

This admission makes it clear that March 2014 was not the first time the plaintiffs submitted a loan modification application.  In my reading, the statute clearly only applies to those submitting applications for the first time.  As Bank of America points out, protection is only extended to first-time applicants for a reason: "provid[ing] appropriate incentives for borrowers to submit all appropriate information in the application and allow[][ing] servicers to dedicate resources to reviewing applications most capable of succeeding on loss mitigation options."  Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10836 (Feb. 14, 2013).  I decline to subvert this purpose by permitting the plaintiffs' claim to go forward given that it was not their first application.  I also find plaintiffs' argument—that the regulation's effective date (January 10, 2014) coupled with the Sixth Circuit's finding that the regulation does not apply retroactively means their prior applications are irrelevant—lacks merit.[1]  For these reasons, I dismiss the plaintiffs' federal claims.[2]

---

[1] The unpublished Sixth Circuit opinion found that the RESPA regulations themselves did not apply retroactively.  *See Campbell v. Nationstar Mortgage*, Civ. 14-1751, 2015 WL 2084023 at ** 6–8 (6th Cir. May 6, 2015).  The case did not stand for the proposition that prior loan applications submitted by plaintiffs could not be considered when evaluating their claims under RESPA.

[2] Bank of America also moves to dismiss on the grounds that the plaintiffs have not stated the actual damages required to state a claim.  Bank of America contends that for all six categories of

## II.    MCPA Claims

The plaintiffs and Bank of America dispute the number and scope of MCPA claims at issue.  In its motion to dismiss, Bank of America argues that the plaintiffs have failed to satisfy the requirements of § 13-301(5)(i) and § 13-301(5)(ii) of the MCPA.  (ECF No. 9-1 at pp. 19–22).  In their opposition, the plaintiffs argue that Bank of America ignores the fact that they also allege violations of additional MCPA sections: 13-301(1), (3), (9), 13-303(4)-(5), and 13-316. (ECF No. 16 at p. 37).  This is inaccurate.  Sections 13-301(3) and (9) are not referenced in the plaintiffs' complaint.  The sections referenced in the complaint are: §§ 13-301(1), 13-301(5), 13-303(4), 13-303(5), and 13-316(c).  I address these allegations in turn.

### a.   Claims under § 13-301 and § 13-303

In their complaint, the plaintiffs make one primary argument in support of their claims under the various provisions of § 13-301 and §13-303. [3]  In short, their contention is that Bank of

damages they allege the plaintiffs have not "specif[][ied] how they were damaged <u>as a result</u> of the alleged RESPA violation."  (ECF No. 18 at p. 10).  Instead, Bank of America argues, the plaintiffs' injuries are a consequence of their own failure to make timely mortgage payments. Given my dismissal of the RESPA claims, I need not rule on the damages question at this stage. If I were considering the issue, however, I would be guided by the principle that the plaintiffs could only recover for damages "causally related" to the Bank's failure to properly respond to their loan application.  *See McCray v. Fed. Home Loan Mortgage Corp.*, Civ. GLR-13-1518, 2014 WL 293535, at *14 (D. Md. Jan. 24, 2014).

Bank of America also disputes the plaintiffs' claim for statutory damages on the theory that Bank of America has exhibited a "pattern or practice" of RESPA violations.  Given my dismissal of the RESPA claims, I decline to opine on the existence of a pattern or practice.

[3] The parties dispute whether the claims under this section are subject to the heightened pleading standard for fraud set forth in Federal Rule of Civil Procedure 9(b).  An opinion of this court affirmed by the Fourth Circuit held that any MCPA claims that sound in fraud were subject to Rule 9(b).  *See Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 622 (D. Md. 2012) *aff'd*, 714 F.3d 769 (4th Cir. 2013).  A more recent opinion of the Court of Special Appeals of Maryland however, found that because certain claims under § 13-301 do not "replicat[][e] a claim for common law fraud . . . . it is unnecessary to allege those violations with particularity." *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 101 A.3d 467, 493–94 (2014).  The federal opinion held that claims under § 13-301(1) were thus subject to the heightened requirement, whereas the Maryland court held that the distinction meant claims under § 13-301(1) were not.

America was misleading or deceitful by promising to make loan modification services available to customers but not intending to actually provide these services. The plaintiffs contend that this conduct violates §§ 13-301(1), (5)(i), and 5(ii) and § 13-303(4)-(5).[4]

Despite plaintiffs' characterization, their claims in fact correspond only with § 13-301(5). This section prohibits "[a]dvertisement[s] or offer[s] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered; or . . . [w]ith intent not to supply reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition."  Md. Code Ann., Com. Law § 13-301(5)(i)-(ii).  Plaintiffs' allegations are that Bank of America violated these regulations by offering certain "consumer services" without the intent to provide them.  (ECF No. 1 at ¶¶ 139. 140, 141).  The other laws cited by plaintiffs prohibit: "[f]alse, falsely disparaging, or misleading oral or written statement[s], visual description[s], or other representation[s] of any kind . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers," Md. Code Ann., Com. Law § 13-301(1) and the "[d]isparagement of the goods, realty, services, or business of another by a false or misleading representation of a material fact."  Md. Code Ann., Com. Law § 13-301(4).  Section 13-303(4)-(5) generally bars "unfair or deceptive trade practice[s]" in "the

---

Given this opaque line-drawing, plaintiffs' overlapping allegations under each provision of the law, and in order respect the Maryland court's interpretation, I decline to hold plaintiffs' claim to the higher pleading standard announced in Rule 9(b).

[4] Specifically, the plaintiffs allege that Bank of America violated §§ 13-301(1) and 13-303(4), "[b]y offering loss mitigation options to consumers without intending to provide them as offered and without intending to supply expect public or demand," which "were false or misleading statements in the extension of credit or the collection of consumer debts in violation of the MCPA."  (ECF No. 1 at ¶ 141).   The plaintiffs allege that the Bank violated § 13-301(5)(i)  by offering consumer services (including loan modifications, repayment plans, and forebearance agreements) "without the intent to provide them," and § 13-301(5)(ii) by offering the same services "with the intent not to supply reasonably expect public demand."  *Id.* at ¶¶ 139, 140.

extension of consumer credit" and "the collection of consumer debt."  Md. Code Ann., Com. Law § § 13-303(4)-(5).

I reject plaintiffs' claims under § 13-301(5) for a simple reason: in the context of mortgage loan modifications, the application of this section makes no sense.  As Bank of America points out, a loan modification is "purely an accommodation on the part of the lender, who offers to lower a borrower's debt obligations in exchange for nothing."  (ECF No. 18 at p. 18).  Accordingly, a loan modification is not available to all mortgage-holders—only those applicants who satisfactorily demonstrate their eligibility.  Even taking as true plaintiffs' allegation that Bank of America stated that it offered loan modification programs, the fact that plaintiffs were not able to receive one is not a violation.  It simply means that their application was denied.  For this reason, I dismiss the claims under § 13-301(5).[5]

In their opposition to Bank of America's motion to dismiss, plaintiffs claim their complaint contains additional allegations under § 13-301(1), the provision that generally bars "false" or "misleading" statements or representations.  The plaintiffs claim to "identif[][y] eleven separate written communications from BofA" that were false or misleading.  (ECF No. 16 at p. 38).  These include: 1) a letter the plaintiffs allege was sent from Bank of America indicating that the holder of the mortgage would not permit loan modifications, when the plaintiffs allege that the owner does in fact do so; 2) a number of letters sent to plaintiffs stating that in the next several days Bank of America would send another letter "that either confirms we have all documents we need from you, or identifies the documents you will need to provide, along with

[5] My ruling is supported by a recent decision of my colleague who dismissed a similar claim on the grounds that Md. Code Ann., Com. Law § 13-301(5) is "inapplicable to loan modifications." *See Robinson v. Nationstar Mortgage LLC*, Civ. TDC-14-3667, 2015 WL 4994491, at *3 (D. Md. Aug. 19, 2015) (reaching the same conclusion by reasoning that a loan modification qualifies as an extension of consumer credit, rather than a "consumer service" under the MCPA).

the timeframe you need to provide them," which plaintiffs allege Bank of America never did; and 3) a letter sent on April 2, 2014 by a Bank CRM indicating that she would work with the plaintiffs "to pursue every available option" to assist in payment of the loan that the plaintiffs allege was false because two days later Bank of America sent a "notice of intent to foreclose." *Id.* at p. 39.

I do not opine on the merits of these claims because plaintiffs did not assert them in their complaint. Although references are made to these communications in the factual portion of their complaint, *see* ECF No. 1 at ¶¶ 83, 86, 88, 89, 96, plaintiffs make clear that their allegations under the MCPA stem from Bank of America "offering loss mitigation options to consumers without intending to provide them as offered." *Id.* at ¶ 141. I have previously discussed the reason I dismissed that claim. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 604 n.12 (D. Md. 2014) (internal citations omitted). *See also Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (stating that a plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). Accordingly, I dismiss the present claims. I do so without prejudice to leave open the possibility that plaintiffs re-file an amended complaint properly pleading these allegations.[8]

---

[8] In making these arguments in their opposition motion the plaintiffs call the court's attention to additional allegations in their complaint concerning Bank of America's broader behavior in the mortgage sphere. (ECF No. 9-1 at pp. 39–40). The plaintiffs cite a proceeding in the District of Massachusetts in which in June 2013 "seven former BofA employees submitted sworn declarations averring that BofA had inadequate procedures in place to process loss mitigation applications." (ECF No. 1 at ¶ 67). The plaintiffs allege that the declarations uncover a scheme in which employees were "instructed to tell borrowers that BofA had not received loss mitigation applications, even though it had, and to tell borrowers to resubmit the applications numerous times even though BofA already had all the documentation needed to process borrowers' loss

     b.   Claim under § 13-316(c)

The plaintiffs also allege Bank of America violated § 13-316(c) of the MCPA because "[a] contact designated by BofA did not respond to consumer complaints and inquiries by the plaintiffs or the class members within 15 days." (ECF No. 1 at ¶ 142). In the complaint, this is all the detail plaintiffs offer—they do not allege with any specificity the precise communications that violated § 13-316(c). [9] In their opposition motion, plaintiffs point to a letter they allegedly sent to Bank of America on November 25, 2014, "explaining that BofA had never requested additional documentation from them or told them what documents it was purportedly missing and requested that BofA continue evaluating their application." (ECF No. 16 at p. 40–41) (citing complaint at ¶ 93). The plaintiffs state that they sent this in response to a letter from Bank of America, and that Bank of America did not respond to their request within 15 days. *Id.* at p. 41. Instead, the Bank sent a letter on December 31, 2014, indicating that plaintiffs' loan had been referred to a foreclosure review committee. *Id.* (citing Complaint at ¶ 93).

The law provides that "a servicer shall designate a contact to whom mortgagors may direct complaints and inquiries . . . . [and] [t]he contact shall respond in writing to each written complaint or inquiry within 15 days if requested." Md. Code Ann., Com. Law § 13-316 (c)(1)-(2). A plain reading of the statute indicates that a mortgagor must request a response in order to

---

mitigation applications." *Id.* They also claim Bank of America favorably evaluated employees who intentionally mislead customers, stalled review of loss mitigation applications, and rejected loss mitigation applications. *See id.* at ¶¶ 68, 69, 70, 71. In the alternative to dismissal, Bank of America moves to strike these allegations as immaterial. *See* (ECF No. 9-1 at p. 22–24). I decline to consider these additional facts because the plaintiffs' own admission the declarations were made prior to the allegedly deceitful conduct in this case and in an entirely unrelated litigation. (ECF No. 1 at ¶ 67). In an amended complaint, plaintiffs would need to, at the least, demonstrate a causal link between their claims and the statements made by Bank of America employees in other litigation in order for them to be considered relevant.

[9] Although pled generally in the complaint, the specific communication is mentioned in the fact section and the portion of the complaint that references § 13-316 (c) does not limit itself to a particular communication.

trigger the servicer's duty to provide one.  Here, the plaintiffs specifically "requested that BofA continue evaluating their application."  There is no allegation that the plaintiffs requested a response to this inquiry—they only sought that the Bank continue to consider their application.  Given this distinction, I do not find plaintiffs have stated a claim and grant defendant's motion to dismiss.[10]  Again, I do so without prejudice.

## CONCLUSION

For the aforementioned reasons, Bank of America's motion to dismiss (ECF No. 9) is granted.  The claims under RESPA are dismissed with prejudice.  The claims under the MCPA are dismissed without prejudice.  Plaintiffs' motion for leave to file sur-reply (ECF No. 19) is also granted.  A separate order follows.

| | |
|---|---|
| _____09/02/2015_____ | _____/s/_____ |
| Date | J. Frederick Motz |
| | United States District Judge |

---

[10] In its reply memorandum, Bank of America argues that § 13-316(c) is preempted "by the very regulation that is the subject of plaintiffs' other claim."  (ECF No. 18 at p. 20).  Plaintiffs have filed a motion for leave to file sur-reply in order to respond to this argument, because "[d]efendant did not argue preemption in its opening brief."  (ECF No. 19).  I grant the motion and have considered the sur-reply, but do not rely on the preemption arguments in reaching my ruling.